Charles JACKSON, Petitioner

v.

**PENNSYLVANIA BOARD
OF PROBATION AND
PAROLE, Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs May 20, 2005.

Decided Aug. 16, 2005.

Ordered Published Oct. 28, 2005.

Harry J. Cancelmi, Jr., Waynesburg, for petitioner.

Alan M. Robinson, Asst. Counsel and Victoria S. Freimuth, Chief Counsel, Harrisburg, for respondent.

BEFORE: SMITH–RIBNER, Judge, and PELLEGRINI, Judge, and COHN JUBELIRER, Judge.

OPINION BY Judge SMITH–RIBNER.

Charles Jackson, an inmate at SCI–Graterford, petitions for review of a decision of the Pennsylvania Board of Probation and Parole (Board) that denied his petition for administrative review of the Board's decision to recommit Jackson as a technical parole violator for having committed "assaultive behavior." Jackson asserts that the Board did not have subject matter jurisdiction over his case because at the time of the alleged behavior he was still in the custody of SCI–Graterford and thus was not yet on parole and that his behavior during the incident that led to the alleged parole violation cannot reasonably be classified as assaultive behavior.

In May 2000 Jackson was sentenced to a two-to-eight-year term of imprisonment for possession with intent to deliver. After completing his minimum sentence, Jackson was released on parole on May 3, 2002. A detainer was pending against Jackson by the State of New Jersey where, in October 2003, he was found guilty of harassment based on his plea. The Board then took custody of Jackson in December 2003 and scheduled a parole revocation hearing for February 11, 2004. However, on February 4 the Board was notified that Jackson was withdrawing his guilty plea and that a trial would be scheduled. The Board determined that Jackson would be released on parole pending resolution of the New Jersey case, and its records reflect that at some point a release order was prepared and submitted.

While preparing to leave SCI–Graterford in the early morning of February 12, 2004, Jackson approached Rachael Anne Ryman, a mental health coordinator for the prison, as she proceeded to the "key bubble" in the main corridor of the prison. Jackson initiated a conversation during which he told Ryman that he was being released on parole and that he would like to see her again outside of the prison. Jackson inquired as to Ryman's marital status and told her that she would be receiving a letter from him. Ryman explained that such contact was contrary to Department of Corrections' policy, and Jackson then wished her a Happy Valentine's Day (February 14) and gave her a hug. Ryman and a co-worker proceeded to Ryman's supervisor's office, where Ryman reported the incident. That same day, the Board issued a warrant to commit and detain Jackson based on the charge that he had violated condition 5C of his parole terms, i.e., refrain from assaultive behavior. 37 Pa.Code § 63.4(5)(iii). Due to this detainer, Jackson was not released. On February 20, 2004, a hearing examiner concluded that probable cause existed to support the charge, and a revocation hearing was scheduled.

At the revocation hearing on May 5, 2004, Jackson was present with counsel

but did not testify. Ryman testified that after the incident she and a co-worker walked to Ryman's supervisor's office, where she filed a report of the incident. Ryman stated that Jackson followed them some part of the way to the office, although she did not say that he attempted to speak to her again or took any other actions. In describing her reaction to the incident, Ryman testified on direct examination that she felt nervous, that her personal space was violated and that although she still does her job she is more aware of things around her. On cross-examination Ryman testified that when Jackson gave her a hug she was not injured in any way, and she acknowledged that Jackson's actions simply got her upset and nervous as she felt they were inappropriate. N.T. at 51–53 (May 5, 2004). Ryman further acknowledged that the incident occurred in full view of inmates, her co-worker and possibly other prison employees.

By decision mailed June 10, 2004, the Board found that Jackson had engaged in assaultive behavior and recommitted him as a technical parole violator to serve nine months of backtime. The Board's authority to so act is set forth in Section 21.1(b) of what is commonly called the "Parole Act," Act of August 6, 1941, P.L. 861, *as amended,* added by Section 5 of the Act of August 24, 1951, P.L. 1401, 61 P.S. § 331.21a(b). By letter mailed July 19, 2004, the Board denied Jackson's administrative appeal, explaining that Ryman's testimony constituted substantial evidence to support a finding that Jackson violated terms of his parole.[1]

On appeal, Jackson first argues that the Board did not have subject matter jurisdiction over this case because at the time of the alleged assaultive behavior Jackson had not been released from the prison and he was still in the custody of the Department of Corrections. Jackson cites *Miller v. Pennsylvania Board of Probation and Parole,* 837 A.2d 618 (Pa.Cmwlth.2003), for the proposition that because he was still incarcerated he cannot be charged with a technical parole violation. Jackson also maintains that this issue, presented for the first time on appeal to this Court, was not waived because it goes to the Board's subject matter jurisdiction and can be raised at any stage of a proceeding.

Jackson is correct that subject matter jurisdiction is an issue that is not waivable, and in fact it may be raised by a court on its own motion. *Heath v. Workers' Compensation Appeal Board (Pennsylvania Board of Probation and Parole),* 580 Pa. 174, 860 A.2d 25 (2004). However, Jackson essentially argues that in issuing the warrant to commit and detain on February 12, 2004 and in subsequently finding him guilty of a technical parole violation, the Board exceeded its statutory authority and misapplied the law regarding what it means to be "on parole." Those claimed errors do not divest the Board, as an adjudicatory tribunal, of jurisdiction to entertain Jackson's appeal because it is one in a general class of cases that the Board is statutorily authorized to hear, specifically revocation of parole for a technical parole violation. Section 21.1(b) of the Parole Act; *Heath.* Because Jackson did not raise this argument below, it is waived for purposes of appellate review. Section 703(a) of the Administrative Agency Law, 2 Pa.C.S. § 703(a); Pa. R.A.P. 1551(a); *Heath.*

---

1. The Court's review is limited to determining whether constitutional rights were violated, an error of law was committed and the findings of fact are supported by substantial evidence. *McKenna v. Pennsylvania Board of Probation and Parole,* 782 A.2d 1105 (Pa. Cmwlth.2001).

Jackson's second argument is that the evidence does not show that his behavior during the incident falls within a reasonable definition of assaultive behavior, because he did not injure or threaten harm to Ryman and the encounter did not cause serious emotional trauma. In rebuttal the Board argues that Jackson's physical contact was clearly unwelcome and offensive and that his behavior caused apprehension in Ryman, and the Board further notes that its determination that Jackson's behavior constituted assaultive behavior under the regulation is a judgment entitled to substantial deference by an appellate court.

■ The Board has broad discretion to administer the parole laws, and the Court will defer to the Board's interpretation of its regulations if it is consistent with statutory authority and is not clearly erroneous. *See Leese v. Pennsylvania Board of Probation and Parole,* 131 Pa.Cmwlth. 448, 570 A.2d 641 (1990). Further, the Court has recognized that assaultive behavior encompasses a broader category of actions than would the crime of assault, and thus actions that would not constitute a crime may nonetheless be sufficient grounds for revocation of parole.[2] *Delgado v. Pennsylvania Board of Probation and Parole,* 679 A.2d 268 (Pa.Cmwlth.1996) (noting that ordinary dictionary meaning of "assault," not definition in Crimes Code, determines whether assaultive behavior occurred).

■ In determining what actions constitute assaultive behavior, this Court has followed a commonsense definition. It requires that the behavior, if it does not involve actual physical harm, must be such that it "clearly evoke[s] a reasonable apprehension of bodily harm" in the person assaulted. *Moore v. Pennsylvania Board of Probation and Parole,* 95 Pa.Cmwlth. 531, 535, 505 A.2d 1366, 1367 (1986) (concluding that parolee's letters and calls stating that he would slash, rape and mutilate the victim constituted assaultive behavior even though no steps taken to carry out threats). Citing *Moore,* the Court reiterated in *Dunkleberger v. Pennsylvania Board of Probation and Parole,* 132 Pa. Cmwlth. 600, 603, 573 A.2d 1173, 1174 (1990), that assaultive behavior included intentional conduct via a "willful offer with force or violence to do hurt to another."

In contrast, in *Johnson v. Pennsylvania Board of Probation and Parole,* 706 A.2d 903 (Pa.Cmwlth.1998), the parolee Johnson and his cousin attempted to induce a witness not to testify against the cousin's boyfriend at a preliminary hearing on criminal charges. Based on the witness' testimony that she felt threatened and intimidated, the Board found that Johnson had committed assaultive behavior and recommitted him to serve twelve months backtime. In reversing, this Court noted that the "assault" component of assaultive

---

2. Section 2701 of the Crimes Code, 18 Pa.C.S. § 2701, relating to "simple assault," provides in part:

(a) **Offense defined.**—A person is guilty of assault if he:

(1) attempts to cause or intentionally, knowingly or recklessly causes bodily injury to another;

(2) negligently causes bodily injury to another with a deadly weapon;

(3) attempts by physical menace to put another in fear of imminent serious bodily injury....

The Restatement (Second) of Torts § 21 (1965) defines "assault" as follows:

(1) An actor is subject to liability to another for assault if

(a) he acts intending to cause a harmful or offensive contact with the person of the other or a third person, or an imminent apprehension of such a contact, and

(b) the other is thereby put in such imminent apprehension.

behavior required either a violent physical or verbal attack or an apparent violent attempt or a willful offer with force to harm another without actual use of force. It concluded:

> Here, although Ms. Taylor testified at the hearing before the Board that she felt intimidated by Johnson's statement, it is clear that Johnson did not make any threats of physical harm toward her. As noted, Johnson, according to Ms. Taylor's testimony, stated "[y]ou ain't got to go out on a brother ... [d]on't go out on a brother." We do not view this statement to be one that would evoke a reasonable apprehension of bodily harm in any individual.

*Id.* at 905 (citation omitted).

■ The record in this case is utterly devoid of any evidence that would demonstrate what could reasonably be interpreted as a threat by Jackson or an offer with force to do harm to Ryman. While Ryman testified that Jackson's behavior offended her, his actions and words were legally insufficient to "evoke a reasonable apprehension of bodily harm in any individual." *Id.*; *Moore,* 95 Pa.Cmwlth. at 535, 505 A.2d at 1367. While an inmate's unsolicited touching of a prison employee may offend the employee and constitute a violation of the Department's internal policies, the Court notes that Jackson was not charged with the unsolicited hugging of Ryman. He was charged with assaultive behavior, and the Board had to prove the elements of that charge.

■ In *Miller* the Court cited *Sigafoos v. Pennsylvania Board of Probation and Parole,* 94 Pa.Cmwlth. 454, 503 A.2d 1076 (1986), for the rule that the Board carries the burden of proof in parole violation proceedings. In this case, the Board must prove by a preponderance of the evidence that Jackson violated the terms and conditions of his parole, and that standard requires such proof that would lead the fact finder to determine that the existence of the contested fact is more probable than its nonexistence. *Smalls v. Pennsylvania Board of Probation and Parole,* 823 A.2d 274 (Pa.Cmwlth.2003); *Sigafoos.* Based on this record, the Court concludes that the Board totally failed to meet its burden of showing that Jackson committed assaultive behavior against Ryman by a preponderance of the evidence. The evidence was insufficient to lead the fact finder to reasonably determine that it was more probable than not that Jackson committed assaultive behavior against Ryman under the facts as she presented them. Because the Board committed an error of law when it denied Jackson's administrative appeal and ordered him recommitted as a technical parole violator to serve nine months of imprisonment under the facts of this case, the Court reverses the Board's order.

Judge COHN JUBELIRER concurs in the result only.

### ORDER

AND NOW, this 16th day of August, 2005, the order of the Pennsylvania Board of Probation and Parole is hereby reversed.