J-S19024-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| TYREEK CAMP | : | |
| | : | |
| Appellant | : | No. 1694 EDA 2017 |

Appeal from the Judgment of Sentence December 16, 2016
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0010232-2011

BEFORE: SHOGAN, J., NICHOLS, J., and PLATT, J.[*]

MEMORANDUM BY NICHOLS, J.:                    **FILED APRIL 20, 2018**

Appellant Tyreek Camp appeals from the judgment of sentence entered following a violation of his probation (VOP). He contends the evidence was insufficient to establish a probation violation and that his sentence was excessive. We affirm.

We adopt the facts and procedural history set forth in the trial court's opinion. *See* Trial Ct. Op. at 1-5. Briefly, Appellant was originally sentenced to two-and-a-half to five years' imprisonment followed by two years' probation for carrying a firearm without a license[1] and a consecutive sentence of three

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] 18 Pa.C.S. § 6106(a)(1). The maximum sentence for a third-degree felony is seven years' imprisonment. 18 Pa.C.S. § 1103(3).

years' probation for carrying a firearm on the public streets or property of Philadelphia.[2] The court held a VOP hearing on October 11, 2016, after which the court found Appellant violated his probation. Following a presentence investigation, on December 16, 2016, the court sentenced Appellant to one to two years' imprisonment for carrying a firearm without a license and a consecutive five years' probation for carrying a firearm on the public streets or property of Philadelphia.

On December 21, 2016, Appellant filed a motion to reconsider his VOP sentence, which challenged the weight and sufficiency of evidence. Appellant's Post-Sentence Mot., 12/21/16, at 1-2 (unpaginated). Appellant's motion did not challenge the discretionary aspects of his sentence or contend that the trial court failed to comply with 61 Pa.C.S. § 6138, also known as Act 122, which governs recommitment following a violation of parole. The court denied Appellant's post-sentence motion on December 23, 2016.

Following reinstatement of his direct appeal rights, Appellant appealed from the judgment of the VOP sentence, and timely filed a court-ordered Pa.R.A.P. 1925(b) statement, which challenged, among other things, the court's imposition of "consecutive, aggravated range sentences." Pa.R.A.P. 1925(b) Statement, 1/31/17.

---

[2] 18 Pa.C.S. § 6108. The maximum sentence for a first-degree misdemeanor is five years' imprisonment. 18 Pa.C.S. § 1104(1).

Appellant raises the following issues in his brief:

1. Should [Appellant] be awarded an arrest of judgment on all charges as there is insufficient evidence to sustain that a technical violation of probation occurred. The Commonwealth did not prove that [Appellant's] actions rose to the level of assaultive behavior.

2. Should [Appellant] be awarded a new sentencing hearing as the Court imposed a sentence for a technical violation of probation without consideration of sentencing guidelines, the State Parole Board Guidelines, or other relevant sentencing factors.

Appellant's Brief at 4.

We summarize Appellant's arguments for both of his issues. He maintains that his statements, "Shit's bout to go down" or "This shit just got real," were made while he "was consumed by transitory anger." *Id.* at 9. He explains that he was present at the court (to support his half-brother, who was the defendant), when he witnessed his mother's arrest.[3] *Id.* at 6, 9. Further, Appellant notes, he was present when the court set his mother's bail at $1 million and was taken into custody. *Id.* at 6, 9. Appellant maintains that at the bail hearing, a police officer pushed him away when he attempted to approach his mother. *Id.* at 9-10. Appellant also claims that standing at the elevator, as discussed in the trial court opinion, "is not physically or verbally assaultive." *Id.* at 10.

---

[3] Appellant's mother was disrupting the trial, so the court had ordered her to stay at least 300 feet away from the courthouse. Trial Ct. Op. at 3.

With respect to his sentencing challenge, Appellant contends for the first time on appeal that the trial court violated 61 Pa.C.S. § 6138(d)(3)(i)[4] by sentencing him to a term of imprisonment exceeding six months.[5] ***Id.*** at 11. Accordingly, Appellant believes he is entitled to a new sentencing hearing. ***Id.*** at 12.

We state the standard of review for a challenge to the sufficiency of evidence for a technical probation violation:

> A challenge to the sufficiency of the evidence is a question of law subject to plenary review. We must determine whether the evidence admitted at trial and all reasonable inferences drawn therefrom, when viewed in the light most favorable to the Commonwealth as the verdict winner, is sufficient to support all elements of the offenses. A reviewing court may not weigh the evidence or substitute its judgment for that of the trial court.

---

[4] This Section provides:

> **(d) Recommitment to correctional facility.**—A technical violator recommitted to a State correctional institution or a contracted county jail under subsection (c) shall be recommitted as follows:
>
> . . .
>
> (3) Except as set forth in paragraph (4) or (5), the **parolee** shall be recommitted for one of the following periods, at which time the parolee shall automatically be reparoled without further action by the board:
>
> > (i) For the first recommitment under this subsection, a maximum period of six months.

61 Pa.C.S. § 6138(d)(3) (emphasis added).

[5] The Commonwealth elected to not argue that Appellant waived the issue.

Revocation of a probation sentence is a matter committed to the sound discretion of the trial court and that court's decision will not be disturbed on appeal in the absence of an error of law or an abuse of discretion. When assessing whether to revoke probation, the trial court must balance the interests of society in preventing future criminal conduct by the defendant against the possibility of rehabilitating the defendant outside of prison. In order to uphold a revocation of probation, the Commonwealth must show by a preponderance of the evidence that a defendant violated his probation. The reason for revocation of probation need not necessarily be the commission of or conviction for subsequent criminal conduct. Rather, this Court has repeatedly acknowledged the very broad standard that sentencing courts must use in determining whether probation has been violated. A probation violation is established whenever it is shown that the conduct of the probationer indicates the probation has proven to have been an ineffective vehicle to accomplish rehabilitation and not sufficient to deter against future antisocial conduct.

**Commonwealth v. Colon**, 102 A.3d 1033, 1041 (Pa. Super. 2014) (citations, quotation marks, and brackets omitted).

With respect to assaultive behavior, in **Commonwealth v. Simmons**, 56 A.3d 1280 (Pa. Super. 2012), this Court found persuasive the reasoning of the Commonwealth Court in **Malarik v. Pa. Bd. of Prob. & Parole**, 25 A.3d 468, 470 (Pa. Cmwlth. 2011):

the Commonwealth Court[] has long recognized that assaultive behavior is broader than the crime of assault for purposes of revocation of parole[.]

Although the [Board of Probation and Parole's] regulations require that parolees refrain from assaultive behavior, the regulations do not provide a definition of assault. However, the Commonwealth Court recognizes assaultive behavior encompasses a broader category of actions than would the crime of assault, and thus actions that would not constitute a crime may nonetheless be sufficient grounds for revocation of parole.

Moreover, in the context of parole violations, assaultive behavior is defined under the ordinary dictionary definition of assault. The Commonwealth Court has also reached such a conclusion in the absence of specific testimony that the victim was, in fact, in apprehension of bodily harm.

*Simmons*, 56 A.3d at 1284 (citations, formatting, ellipses, quotation marks, and original brackets omitted). The *Simmons* Court applied the above rationale for revoking parole to affirm a finding of assaultive behavior that resulted in the revocation of the defendant's probation. *Id.* at 1285. We add that the dictionary definition of assault is "a violent attack with physical means [or] nonphysical weapons," or "an apparently violent attempt or a willful offer with force or violence to do hurt to another without the actual doing of the hurt threatened." Webster's Third New International Dictionary 130 (1986).

With respect to Appellant's case, after careful review of the parties' briefs, the record, and the decision by the Honorable Leon W. Tucker, we affirm Appellant's sufficiency challenge on the basis of the trial court's decision. *See* Trial Ct. Op. at 5-6.

We turn to Appellant's sentencing challenge under 61 Pa.C.S. § 6138, which is entitled "Violation of terms of parole." 61 Pa.C.S. § 6138. We need not resolve whether Appellant's argument is a preserved challenge to the discretionary aspects of his sentence or a challenge to the legality of his sentence because Section 6138 does not apply: Appellant did not violate the terms of his parole. As Appellant himself recognized, he violated the terms of

his probation—not parole. Appellant's Brief at 7-8. Probation is not identical to parole, as the Pennsylvania Supreme Court explained:

> a court faced with a violation of probation may impose a new sentence so long as it is within the sentencing alternatives available at the time of the original sentence. In contrast, a court faced with a parole violation must recommit the parolee to serve the remainder of the original sentence of imprisonment, from which the prisoner could be reparoled.

***Commonwealth v. Holmes***, 933 A.2d 57, 59 n.5 (Pa. 2007) (citations omitted). Appellant cannot argue he is entitled to relief based on a statute governing parole.

Judgment of sentence affirmed.

Judge Shogan joins in this memorandum.

Judge Platt concurs in the result.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 4/20/18

Circulated 03/29/2018 08:44 AM

## COURT OF COMMON PLEAS OF PHILADELPHIA COUNTY
## FIRST JUDICIAL DISTRICT OF PENNSYLVANIA
## CRIMINAL TRIAL DIVISION

| | | |
|---|---|---|
| **COMMONWEALTH OF PENNSYLVANIA** | : | **CP-51-CR-0010232-2011** |
| | :FILED | |
| **v.** | OCT 1 1 2017 | |
| **TYREEK CAMP,** Appellant | Office of Judicial Records Appeals/Post Trial | **SUPERIOR COURT** |
| | : | **1694 EDA 2017** |
| | **OPINION** | |
| **LEON W. TUCKER, J.** | | **October 10, 2017** |

### I.  Procedural History

This matter comes before the Superior Court of Pennsylvania following the judgment of sentence imposed upon Tyreek Camp (hereinafter "Appellant") for a technical violation of probation due to assaultive behavior. On April 25, 2012, the Honorable Diana Louise Anhalt convicted Appellant of two violations under the Uniform Firearm Act (VUFA): carrying a firearm without a license;[1] and carrying a firearm on a public street.[2] On June 1, 2012, Judge Anhalt sentenced Appellant to two and half to five (2 ½ - 5) years incarceration for VUFA §6106, and three (3) consecutive years probation for VUFA §6108. On July 28, 2016, Appellant was released from prison after serving the full five year sentence for VUFA §6106. The violation of probation ("VOP") occurred from events happening on August 15, 2016 and August 17, 2016 before Judge Anhalt. Unbeknownst to her at the time, Appellant was on Judge Anhalt's probation. To avoid impropriety or the appearance of impropriety by Judge



CP-51-CR-0010232-2011 Comm v Camp Tyreek
Opinion

8014577081

---

[1] 18 Pa.C.S. §6106
[2] 18 Pa.C.S. §6108

1

Anhalt the sentencing judge, jurisdiction was relinquished to the Honorable Judge Leon W Tucker, Supervising Judge of the Philadelphia Court of Common Pleas, Criminal Division

On October 11, 2016, this Court found Appellant violated the terms of his probation On December 16, 2016, after presentence reports, Appellant was sentenced to one to two (1-2) years incarceration on VUFA §6106 followed by five (5) years probation on VUFA §6108. On December 21, 2016, Appellant filed a Motion for Reconsideration of VOP sentence. The Motion for Reconsideration of VOP sentence was denied on December 23, 2016. On January 18, 2017, Appellant filed a Notice of Appeal that was quashed on March 13, 2017 due to an untimely filing. On March 19, 2017, Appellant filed a Post Conviction Relief Act ("PCRA")[3] petition requesting his direct appellate rights be reinstated *nunc pro tunc* due to several reasons including ineffective assistance of counsel for filing an untimely Notice of Appeal

On May 16, 2017, this Court granted the PCRA petition and reinstated Appellant's appellate rights, pursuant to agreement made with the Commonwealth, *nunc pro tunc*. The Appellant filed a Notice of Appeal to Superior Court on May 19, 2017. On June 19, 2017, this court issued an Order directing Appellant to file a concise statement of matters complained of on appeal, pursuant to Pa.R A.P. 1925(b). On July 7, 2017 Appellant timely filed a statement of matters complained of on appeal (hereinafter referred to as "1925(b) Statement"). In the 1925(b) Statement, the Appellant claimed verbatim·

1. That the Defendant should be awarded an arrest of judgment on all charges as there is insufficient evidence to sustain that a technical violation of probation occurred. The Commonwealth did not prove that Defendant's actions rose to the level of assaultive behavior.

2. In the alternative, the Defendant must be awarded a new hearing as the greater weight of the evidence does not support revocation of probation. The greater weight did not

---

[3] 42 Pa. Cons Stat. §§9541-9546

2

support any proposition finding the Defendant engaged in assaultive behavior The revocation was based on speculation, conjecture, and surmise.

3. The Defendant must be awarded a new sentencing as the Court imposed a sentence for a technical violation of probation without consideration of sentencing guidelines, the State Parole Board Guidelines, or other relevant sentencing factors

## II.    Facts

On August 15, 2016, Appellant and his mother Fatima James (hereinafter, "James") were attending Shaheed Kelly's (hereinafter, "Kelly") trial where Kelly was charged with homicide. N.T., 10/11/2016 at 15. Kelly is Appellant's brother. *Id* Judge Anhalt presided over Kelly's trial. *Id* at 14. During the proceedings, Judge Anhalt banned James from attending the remainder of the trial because of her disruptive behavior. *Id.* at 18 Judge Anhalt also issued an Order requiring James stay 300 feet away from the courthouse and prohibiting her from communicating with any jurors whatsoever. James left the courtroom and proceeded to scream and yell in the hallway N T., 10/11/2016 at 19. According to Judge Anhalt's stipulated testimony, after the jury was excused for the day, James was brought to the courtroom, in the custody of the sheriff Commw Ex. 1, Anhalt's Test., at 1. Judge Anhalt conducted a brief hearing and set James' bail. *Id* James continued to be disruptive, and had to be carried to a holding cell by the sheriff. *Id* Appellant stood up angrily and began shouting something to the effect of "Shit's bout [sic] to go down" or "This shit just got real." Commw. Ex. 1, Anhalt's Test , at 1.

According to the testimony of Highway Officer James Boone (hereinafter, "Boone"), Appellant made threatening statements after his mother's arrest for violating Judge Anhalt's Order. Commw. Ex. 2, Boone's Test., at 1 Boone testified that Appellant tried to force his way past the sheriffs to get to his mother and had to be pushed back *Id.* According to the stipulated testimony of Boone, he pushed the Appellant back. *Id.* Appellant responded by

3

saying "You better get your hands off of me if you know what's best for you." *Id.* "Do you know who I am? Y'all [sic] can google search me, I'm a mother fucking monster. If my brother goes down, I'm taking y'all [sic] down with me. This shit's about to get real " *Id.* Officer Boone informed Appellant that he was not allowed back in the building. *Id* Appellant responded by saying "there isn't anyone in that building who can stop me." *Id*

On August 17, 2017 while the jury was deliberating, Judge Anhalt took a break and went out to the public elevator [4] Commw. Ex. 1, Anhalt's Test , at 1 As Judge Anhalt arrived at the elevators, Appellant followed her and also pressed the down button *Id* Appellant then "turned his body to face the Judge and stared at her as she waited for the elevator " *Id.* Judge Anhalt felt uneasy and did not want to get in the elevator with Appellant alone so she walked back towards the courtroom. *Id* As she began walking, she heard the elevator arrive. *Id* Judge Anhalt went to get a police escort to go with her downstairs. *Id* As the officer was escorting her, she noticed that Appellant was still standing by the elevator after it left. *Id* Appellant never got on the elevator that came while he and Judge Anhalt were waiting. *Id* A police officer escorted Judge Anhalt from the 8th floor to the 6th floor *Id* Judge Anhalt took an elevator from the 6th floor to the 1st floor and reported the incident to the Philadelphia Sheriff's Office. *Id.* Judge Anhalt subsequently learned that Kelly is Appellant's brother and Appellant is on her probation *Id*

Guy D'Andrea, the Assistant District Attorney on Kelly's case, the homicide case which Judge Anhalt was presiding over, testified that Judge Anhalt's demeanor on August 17, 2016, after the encounter with Appellant, was "incredibly shaken, clearly scared, and

---

[4] Judge Anhalt used the public elevator as most judges and employees in the courthouse do. As of August 4, 2016, the judicial and employee elevator have been out of service

there's no other words to describe it." N.T., 10/11/2016 at 26. On August 19, 2016, the Dignitary Protection Unit was transporting Judge Anhalt to and from work, and staying with her during off hours because she feared for her physical safety Commw. Ex 1. Anhalt's Test , at 1

On August 26, 2016, Appellant was arrested for a technical violation of probation stemming from his encounter with Judge Anhalt This Court held a VOP hearing on October 11, 2016. At the hearing, Judge Anhalt's testimony was presented by way of a stipulated statement Commw Ex. 1, Anhalt's Test., at 1 After a full hearing before this Court, Appellant was found to have violated condition 5(c) of his probation conditions, which states that one shall refrain from any assaultive behavior 37 Pa Code § 63 4(5)(iii) Appellant's probation on his sentence for VUFA §6106 was revoked and he was sentenced to one to two (1-2) years of state incarceration. N.T., 12/16/2016 at 30 For his violation of probation stemming from his violation of VUFA §6108, Appellant's probation was revoked and he was sentenced to five years reporting probation which runs consecutive to his incarceration *Id* at 31.

## III.   Legal Analysis

This Court properly determined that Appellant violated his probation due to assaultive behavior based on the stipulated testimony of Judge Anhalt and Officer Boone, and the credible testimony of Assistant District Attorney, Guy D'Andrea Appellant's sentence was in accord with his violation.

   **1. There was sufficient evidence to sustain that a technical violation of probation occurred.**

5

In order to revoke probation, the Commonwealth is required to prove by a preponderance of the evidence that a defendant violated his probation *Commonwealth v Allshouse*, 33 A 3d 31, 37 (Pa. Super. 2011). Appellant is not required to commit or be convicted of a crime for probation to be revoked. *Commonwealth v Castro*, 856 A.2d 178, 180 (Pa Super. 2004). A technical violation occurs when an individual fails to abide by the conditions of his probation *Hines v. Pennsylvania Board of Probation and Parole*, 420 A.2d 381 (Pa 1980) As a condition of his probation, an individual is not permitted to engage in assaultive behavior. 37 Pa. Code § 63.4(5)(iii). Courts recognize that assaultive behavior encompasses a broader category of actions than the crime of assault, and thus actions that would not constitute a crime, may nonetheless, be sufficient grounds for revocation of parole *Commwealth v Simmons*, 56 A.3d 1280, 1284 (PA. Super. 2012)(citing *Jackson v Pennsylvania Board of Probation and Parole*, 885 A.2d 598, 601 (Pa.Commw.Ct 2005)) Cases dealing with parole are persuasive because the language of the relevant condition is the same in both parole and probation contexts *Simmons*, 56 A 3d at 1284

Here, Appellant engaged in assaultive behavior on two occasions. On August 15, 2017, Judge Anhalt heard the defendant yell something to the effect of, "Shit's bout[sic] to go down" or "This shit just got real" after the sheriff carried his mother to the holding cell for being disruptive. Commw. Ex 1, Anhalt's Test , at 1. Officer Boone also testified that he heard Appellant yell "Google search me, I'm a mother fucking monster." Commw. Ex. 2, Boone's Test , at 1. "If my brother goes down, I'm taking y'all with me." *Id*. The act of expressing a threat, and not its effect on the intended victim, is sufficient to warrant a revocation of parole. *Simmons*, 56 A 3d at 1284 (citing *Malarik v Pennsylvania Board of Probation and Parole*, 25 A.3d 468, 470 (Pa Commw Ct.2011)). Therefore, the threats

Appellant made on August 15, 2017 alone rise to the level of assaultive behavior because they were made in the presence of Judge Anhalt and can be construed, as she did, to include her.

On August 17, 2017, Appellant followed Judge Anhalt to the elevator and stared her down Commw. Ex. 1, Anhalt's Test , at 1 According to the testimony of Guy D'Andrea, the Assistant District Attorney on Kelly's case, Judge Anhalt was incredibly shaken and clearly scared after the encounter. N.T., 10/11/2016 at 26 Assaultive behavior includes conduct that would clearly evoke a reasonable apprehension of bodily harm in any individual. *Simmons*, 56 A 3d at 1284 (citing *Moore v Pennsylvania Board of Probation and Parole*, 505 A.2d 1366, 1367 (Pa.Commw.Ct 1986)). On August 19, 2016, two days after the elevator incident, Judge Anhalt requested the Dignitary Protection Unit transport her to and from work because she feared for her physical safety Commw. Ex. 1, Anhalt's Test , at 1. A violation of probation can be found when probation is no longer a proper or sufficient means of rehabilitating an offender. *Commonwealth v Ortega*, 995 A.2d 879, 886 (Pa Super. 2010) Clearly, Appellant's actions rose to a level where probation is no longer proper or a sufficient means of rehabilitation.

Appellant's actions also constitute intentional assaultive behavior personally against the court It is evident from the Appellant's conduct during his mother's arrest, and outside the elevator, that he committed assaultive behavior. Appellant's conduct equates to assaultive behavior because any reasonable person in Judge Anhalt's positon would have reason to believe that they were going to suffer bodily harm, and Appellant's intention was to communicate that he would cause physical harm Therefore, there is sufficient evidence to sustain that a technical violation occurred.

7

**2. The verdict was not against the weight of the evidence because the credible testimony from several witnesses show that Appellant's actions rose to the level of assaultive behavior.**

The role of the trial judge as the trier of fact is to determine which witnesses are most credible and to weigh the evidence that has been produced *Commonwealth v Brown*, 23 A.3d 544, 559 (Pa. Super 2011) The trier of fact is free to believe all, part, or none of the testimonies *Id* at 560. It also determines which testimonies it finds most credible or convincing *Id* In *Commonwealth v Richard*, 150 A.3d 504, 520 (Pa. Super 2016), the defendant was found guilty of intimidating several witnesses Two of the witnesses testified that defendant intentionally threatened them There, defendant testified his statements were not threatening. The jury, as the trier of fact, gave more weight to the testimony of the two witnesses than the defendant. *Id.* On review, the Superior Court determined that the trial court's verdict was not against the weight of the evidence. *Id* As here, the Court found the Commonwealth's testimony credible and the Commonwealth proved its burden

A new trial should only be awarded when the verdict goes against the weight of the evidence, so as to shock one's sense of justice and the awarding of a new trial is vital for justice to prevail *Brown*, 23 A.3d at 558. In *Brown*, the defendant argued that the jury's verdict was against the weight of the evidence because the witness' testimony was "inconsistent and her identification of him was tainted and unreliable " *Id.* at 557 The Superior Court found that because the witness made detailed observations of the defendant's appearance and the testimony was corroborated by the officer's testimony, her identification of the defendant was reliable and the jury's findings were not against the weight of the evidence. *Id.* at 559.

8

Here, the Court did not find the Appellant to be credible, in fact the Court found his testimony incredible The Appellant denied stating "shit's bout to go down" or "this shit just got real" and merely stated "shit is real" and did not direct that statement towards anyone. N T , 10/11/2016 at 35. Appellant also denied stating "don't come near me, I'm a mother fuckin monster! . " and denied coming in contact with Police Officers in the court. *Id* Finally, Appellant stated he just happened to be walking in the same direction as the Judge and did not follow her to the elevator *Id*.

Weighing all of the evidence before the court, including testimonies from Judge Anhalt, Officer Boone, Assistant District Attorney Guy D'Andre, and the Appellant, the court found Appellant did engage in assaultive behavior, directed in part towards Judge Anhalt Although Appellant denies saying and engaging in most of the behavior alleged by the Commonwealth. the Court cannot ignore testimony from three different witnesses regarding the events on August 15, 2016 and August 17, 2016. The evidence shows that the defendant intended to intimidate, and did intimidate Judge Anhalt. Therefore, Appellant committed assaultive behavior.

### 3. Appellant's sentence was in accord with the violation.

Sentencing courts have broad discretion in determining sentences for probation violators Upon revocation, the court may impose incarceration when the defendant has been convicted of another crime, the defendant's behavior suggests that he is in danger of committing another crime if not imprisoned, or the sentence is necessary to "vindicate the authority of the court " 42 Pa.C.S. § 9771 (c). After probation has been revoked, a sentencing court may impose any sentence that was available at the time of the initial underlying sentence. 42 Pa.C.S § 9771(b). Upon sentencing following a revocation of probation, the trial court is

9

limited only by the maximum sentence that it could have imposed originally at the time of the probationary sentence. *Simmons*, 56 A.3d at 1286, 1284 (citing *Commonwealth v MacGregor*, 912 A.2d 315, 317 (Pa Super 2006)).

In *Simmons*, the Superior Court held that a sentence of six (6) months to ten (10) years incarceration was legal because the sentence fell within the maximum sentence that the court could have imposed during his original conviction. *Simmons*, 56 A.3d at 1287. Like the defendant in *Simmons*, Appellant has been found to have engaged in assaultive behavior and his probation has therefore been revoked and incarceration is proper. N T. 12/16/2016 at 33 Appellant's behavior clearly has not been consistent with the rehabilitative intent of probation.

In *Commonwealth v Crump*, 995 A 2d 1280, 1284 (Pa. Super. 2010), Superior Court determined that because the defendant's new sentence, one to two (1-2) years incarceration followed by four (4) years probation, did not surpass the ten (10) year maximum that the original sentencing court could have imposed for the underlying crime that led to the probation, the sentence was legal.

Similar to *Crump*, Appellant's consecutive split sentence does not exceed the statutory maximum that can be imposed on a VUFA charge. A violation of § 6106, which prohibits individuals from carrying a concealed firearm without a license, is a felony of the third degree and carries a maximum sentence of seven (7) years incarceration 18 Pa C S § 6106, 18 Pa.C.S. § 1103. Appellant's sentence, one to two (1-2) years followed by five (5) years of probation, does not exceed the statutory limit.

10

## IV. Conclusion

The Commonwealth submitted sufficient evidence to prove the defendant engaged in assaultive behavior  The court's verdict is not contrary to the weight of the evidence because the stipulated testimonies from Judge Anhalt and Officer Boone prove that the Defendant engaged in assaultive behavior and the defendant should not be awarded a new hearing, or a new sentence because the sentence that has been imposed is within the statutory limits of the original violation of the Uniform Firearms Act

BY THE COURT:

LEON W. TUCKER,
Supervising Judge,
Criminal Division

CSW

11

# COURT OF COMMON PLEAS OF PHILADELPHIA COUNTY
## CRIMINAL TRIAL DIVISION

## COMMONWEALTH V. TYREEK CAMP, CP-51-CR-0010232-2011, 1694 EDA 2017

**TYPE:** Opinion

## PROOF OF SERVICE

I hereby certify that I am this day serving the foregoing Court Order upon the person(s) and in the manner indicated below, which service satisfies the requirements of PA R.CRIM P. 114·

*Defense Counsel/Party·* Joseph Todd Schultz, Esquire
1518 Walnut Street
Ste 808
Philadelphia, PA 19102

*Type of Service* ( ) Personal ( X ) First Class Mail ( ) Other, please specify

*District Attorney* Hugh J. Burns, Jr., Esquire
District Attorney's Office
Widener Building
3 South Penn Sq.
Philadelphia, PA 19107

*Type of Service* ( ) Personal ( X ) First Class Mail ( ) Other, please specify

*Dated.* 10 - 11 - 2017

_____
*Law Clerk's Signature*