# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

John M. Sowers,      :
     Petitioner  :
          :
  v.        :  No. 272 C.D. 2023
          :  SUBMITTED: September 9, 2025
Pennsylvania Parole Board,  :
     Respondent :


BEFORE:  HONORABLE ANNE E. COVEY, Judge
     HONORABLE CHRISTINE FIZZANO CANNON, Judge
     HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge


## OPINION NOT REPORTED

**MEMORANDUM OPINION BY**
**SENIOR JUDGE LEADBETTER**     **FILED: October 23, 2025**


John M. Sowers, Petitioner, petitions for review from the determination of the Pennsylvania Parole Board, Respondent. At the time of his petition for review, Sowers was incarcerated at the State Correctional Institution at Huntingdon after recommitment as a convicted parole violator (CPV) by the Board (he has since been released).

The facts of the matter were elaborated in an unpublished memorandum opinion of the Court disposing of Petitioner's counsel's application for leave to withdraw appearance, which was denied without prejudice.[1] *See Sowers v. Pa. Parole Bd.* (Pa. Cmwlth., No. 272 C.D. 2023, filed July 5, 2024) (*Sowers I*). To recapitulate, Petitioner, after an initial conviction in 2003 resulting in a sentence of

---

[1] Counsel has now filed a brief on the merits, to which the Board has responded. The matter is now ripe for disposition.

8 years and 6 months to 22 years, has had several run-ins with the law resulting in reincarceration and recomputations of his maximum sentence date. Prior to his most recent parole revocation, Petitioner was last granted parole on January 14, 2019, with an actual release date of May 21, 2019, and a new maximum sentence date of July 6, 2028. Jan. 14, 2019 Order of Release on Parole, Certified R. "C.R." at 41-47.

In June 2022, Petitioner was arrested on new charges: harassment—subject to other physical contact(s) under Section 2709(a)(1) of the Crimes Code, 18 Pa.C.S. § 2709(a)(1), a summary offense; and terroristic threats with intent to terrorize another under Section 2706(a)(1) of the Crimes Code, 18 Pa.C.S. § 2706(a)(1), a misdemeanor of the first degree. Criminal Complaint, C.R. at 59-62. Of salience, the criminal complaint utilizes both an Administrative Office of Pennsylvania Courts (AOPC) 412A Form (captioned as "Police Criminal Complaint"; hereinafter, "police criminal complaint"), *id.* at 60, to list the offenses and the underlying allegations separately and an AOPC 411C Form (captioned as "Police Criminal Complaint Affidavit of Probable Cause"; hereinafter, "affidavit of probable cause"), *id.* at 62, which set forth the allegations together, without separation. The police criminal complaint for the misdemeanor terroristic threats charge stated that Petitioner told "the victim he was a dead man" while "wield [sic] a knife." *Id.* at 60. The police criminal complaint for the summary harassment charge stated that the Petitioner "toss[ed] a rock at the victim." *Id.*

The affidavit of probable cause stated that Petitioner's offenses included "assault and threat related offenses" and listed as facts that Petitioner "got into a physical altercation with" the victim and that "[a]fter reviewing camera footage, and speaking with a witness, it was determined that [Petitioner] tossed a rock at [t]he [v]ictim which resulted [in] a scuffle. After the scuffle [Petitioner] took

2

out his folding pocketknife, opened it, and walked towards [t]he [v]ictim saying 'you're a dead man.'" *Id.* at 62. As a result of these charges, the Board lodged a warrant to commit and detain Petitioner. Warrant to Commit and Detain, C.R. at 49.

Petitioner entered a negotiated guilty plea and was sentenced for harassment; the terroristic threats charge was withdrawn. Criminal Docket, Ct. of Common Pleas of Adams Cnty., C.R. at 65. Petitioner signed a Board document waiving a revocation hearing and his right to counsel and admitting to the offense and parole violation. Waiver of Revocation Hr'g and Counsel/Admis. Form, C.R. at 51-52. A hearing examiner prepared a report recommending an award of partial credit for time at liberty on parole, explaining, *inter alia*, apparently based upon the averments in the criminal complaint, that "[t]he new offense was assaultive/aggressive in nature and involved possession of a knife thereby warranting denial of credit for time at liberty on parole for at least a portion of the time at liberty on parole," but that "[t]he new offense is a summary level conviction that warrants awarding at least a portion of the time at liberty on parole." Revocation Hr'g Report, C.R. at 74. The hearing examiner also noted Petitioner's previous recommitment twice as a CPV for driving under the influence, and his positive adjustment and lack of sanctions during his most recent parole for multiple years as another reason for awarding credit for a portion of the time at liberty on parole.[2] *Id.*

---

[2] The hearing examiner reiterated as follows:

> Preponderance is established by waiver/admission and is supported by documentary evidence. The Board has previously recommitted him twice as a [CPV] for [driving under the influence], but he was on reparole for over three years with good adjustment and no noted sanctions. He has now been convicted of summary [h]arassment. The offense stems from an incident where he threw a rock at his neighbor's window leading to a scuffle where he pulled out a knife

**(Footnote continued on next page…)**

3

at 74-75. The hearing examiner recommended as follows: "that the Board AWARD credit from 05/21/2019 (date of parole) to 06/21/2021 (date one year before his arrest). I recommend that the Board DENY credit for the remaining time at liberty on parole. This decision would essentially deny the offender credit for one[ ]year of time at liberty on parole." *Id.* at 75.

A Board member adopted the hearing examiner's recommendation and recommitted Petitioner as a CPV to serve six months' backtime with a review date, changing his maximum sentence date to July 7, 2029. *Id.* at 75, 79, 81; Order to Recommit, C.R. at 87. Petitioner, acting *pro se*, filed an administrative appeal form with several pages attached detailing the basis for his requested relief.[3] Admin. Remedies Form and Attachs., C.R. at 93-100. By letter dated February 22, 2023, the Board denied administrative relief and affirmed its earlier decision. Bd. Resp., C.R. at 107-08. The Board cited Petitioner's new conviction as meeting the threshold for recommitment under Section 6138(a)(1.1) of the Prisons and Parole Code, 61 Pa.C.S. § 6138(a)(1.1). *Id.* at 107. It further stated that pursuant to the waiver/admission form signed by Petitioner, the Board had acted within its authority to revoke his parole. *Id.* Finally, the Board concluded that its earlier decision to

---

and threatened the other person. He was on parole from a sentence for [b]urglary and [a]rson at the time. Based on the aggressive/assaultive nature of the offense, I am voting to recommit him as a CPV with a review date. I am also recommending that the Board award partial credit for time at liberty on parole.

Revocation Hr'g Report, C.R. at 81.

[3] Petitioner later filed an "amendment to administrative appeal," received by the Board on November 28, 2022. The Board stated that the "[a]dditional correspondence . . . will not be considered." Bd. Resp., C.R. at 107, citing 37 Pa.Code § 73.1. Petitioner has not challenged this refusal to consider the amendment on appeal.

4

revoke parole was supported by substantial evidence, did not constitute an error of law, and did not violate Petitioner's constitutional rights. *Id.* at 107-08.

On appeal, Petitioner raises the following issues[4]:

1. Whether the [] Board erred or abused its discretion in applying Section 6138(a)(1.1) of the Prisons and Parole Code . . . as a basis for recommitting Petitioner as a [CPV], even though such section was not [in] effect when Petitioner was paroled, thus denying him notice of conditions on which he could be recommitted and violating his due process rights.[5]

   . . . .

2. Whether the [] Board erred or abused its discretion in recommitting Petitioner based upon a new conviction in a court of record, even though the judge was sitting in the capacity of a magistrate.
   . . . .

3. Whether the [] Board decision, which cites aggressive/assaultive nature of the offense and a knife as evidence to recommit and violate, was supported by substantial evidence where the conduct for the charges against Petitioner constituted self-defense and was therefore not "assaultive."
   . . . .

4. Whether the Parole Board erred or abused its discretion relying upon allegations of the dismissed terroristic

---

[4] The listing of issues in Petitioner's brief loosely reflects the articulation of issues the Court was able to identify in the petition for review. *Sowers I*, slip op. at 5-6. Petitioner has abandoned the second issue identified by the Court, "that the Board was provided with evidence showing that Petitioner was 'not guilty of wrongdoing' but found him to be a CPV despite that." *Id.* at 5.

[5] The issue, as set forth, differs in emphasis from that raised by Petitioner, who styled his averment as being that the "parole agreement" was a "contract" requiring notice of changes, including statutory changes, and that denial of such notice was a violation of due process. Pet. for Rev. ¶ 4.

5

threats charge, thereby depriving Petitioner of time at liberty on parole[].

. . . .

5. Whether Petitioner's waiver of the revocation hearing was not voluntary due to "agents of parole" advising Petitioner to sign the waiver under various false pretenses and "coercion" and due to the parole agent, Petitioner's counsel, and the District Attorney advising it would not be a CPV for the new summary offense.

Pet'r's Br. at 27-28. Issues three through five are addressed in a single section of Petitioner's brief. Issues three and four are interrelated and are discussed as a single issue below.

With regard to the first issue, Petitioner asserts that the application of Section 6138(a)(1.1) of the Prisons and Parole Code was a violation of the *ex post facto* clause of the United States Constitution,[6] because it was not in effect at the time of his previous parole release.[7] Section 6138(a)(1.1) provides, *inter alia*, that a parolee who pleads guilty to various offenses, including the summary offense of harassment under Section 2709 of the Crimes Code, may at the discretion of the Board be recommitted as a CPV. 61 Pa.C.S. § 6138(a)(1.1).

The Board argues in the alternative[8] that application of Section 6138(a)(1.1) to covered offenses committed after the effective date of that provision

---

[6] Article I, Section 10 of the United States Constitution provides, in pertinent part: "No State shall ... pass any Bill of Attainder, ex post facto Law, or Law impairing the Obligation of Contracts, or grant any Title of Nobility." U.S. CONST. art. I, § 10.

[7] Section 6138(a)(1.1) was added to the Prisons and Parole Code by Section 20 of the Act of December 18, 2019, P.L. 776, and became effective 120 days later, April 16, 2020.

[8] The Board's primary argument is that Petitioner waived this issue because it was not raised before the Board. Indeed, no mention is made of the prohibition on *ex post facto* laws; however, Petitioner did assert that the Board had failed to "notify" him of the change in law as a "change to **(Footnote continued on next page…)**

6

does not violate the *ex post facto* clause citing an unreported decision,[9] *Maxwell v. Pennsylvania Parole Board* (Pa. Cmwlth., No. 16 C.D. 2022, filed Nov. 22, 2022), slip op. at 7-8. However, *Maxwell* is distinguishable in that the effective date of Section 6138(a)(1.1) antedated **both** the date of parole **and** the date of the offense in that case.[10] The question here is whether the *ex post facto* clause applies where the effective date of the new provision was after parole but before the date of the new offense. Although the question has recently been presented to the Court in another unreported case, it has not been resolved because the petitioner in that case was properly recommitted as a CPV under Section ***6138(a)(1)***, 61 Pa.C.S. § 6138(a)(1).[11] Today, we find that whether the effective date antedated the new offense is the pertinent question.

Our Supreme Court has recognized that a retroactive change in parole laws may violate the *ex post facto* clause if the amended rule creates a significant risk of prolonging an inmate's incarceration. *Cimaszewski v. Pa. Bd. of Prob. & Parole*, 868 A.2d 416, 426-27 (Pa. 2005). "Two critical elements must be present for a criminal or penal law to be violative of the *ex post facto* clause: 'It must be

---

the terms of the contract," i.e., the conditions of parole/reparole, which he signed (*see* Pet. for Rev. ¶ V). Viewing the substance of Petitioner's claims rather than his use of inapt terminology, it is clear that Petitioner is asserting that Section 6138(a)(1.1) was an *ex post facto* law.

[9] Unreported opinions of this Court issued after January 15, 2008 may be cited for their persuasive value, but not as binding precedent. Cmwlth. Ct. Internal Operating Procs. § 414(a); *see also,* Pa.R.A.P. 126(b) and (d).

[10] In *Maxwell*, we noted that the petitioner's offenses occurred in April of 2021, which was after the effective date of Section 6138(a)(1.1) before holding that the provision did not violate the *ex post facto* clause. *Maxwell*, slip op. at 7-8.

[11] *See Moy v. Pa. Parole Bd.* (Pa. Cmwlth., No. 259 C.D. 2023, filed June 5, 2025), slip op. at 8.

7

retrospective, that is, it must apply to events occurring ***before its enactment,*** and it must disadvantage the offender affected by it.'" *Id.* at 423 (emphasis supplied) [quoting *Weaver v. Graham*, 450 U.S. 24, 29 (1981)]. Here, the events constituting the new offense occurred after Section 6138(a)(1.1) was enacted. Thus, there is no *ex post facto* clause violation as a result of the new provision.

Second, Petitioner argues that the Board erred or abused its discretion by recommitting him on a conviction in a court of record where the judge was sitting in the capacity of a magisterial district judge.[12] Petitioner relies upon *Chesson v. Pennsylvania Board of Probation and Parole*, 47 A.3d 875, 880 (Pa. Cmwlth. 2012), wherein we held that a conviction of a summary offense before the Philadelphia Municipal Court, normally a court of record, was not a conviction in a court of record for purposes of Section ***6138(a)(1)***, which provides generally for revocation upon conviction punishable by imprisonment. This was because:

> Chapter 4 [of the Criminal Rules of Procedure] provides that summary offenses, whether brought by citation or complaint, are filed with an "issuing authority." Pa. R.Crim. P. 406; Pa. R.Crim. P. 420. The summary offense charged is then either disposed of by a guilty plea or by a trial before the "issuing authority." Pa. R.Crim. P. 424; Pa. R.Crim. P. 454. "Issuing Authority" is defined under the Rules as "any public official having the power and authority of a magistrate, a Philadelphia arraignment court magistrate, or a magisterial district judge." Pa. R.Crim. P. 103.

*Id.* at 880. Because Pa. R.Crim. P. 1002(A) provides that "all criminal proceedings in which a person is accused only of . . . non-traffic summary offenses . . . shall proceed as provided in Chapter 4 of the Rules of Criminal Procedure," we held that

---

[12] The Board's brief does not respond to this argument.

8

"a conviction for a summary offense before the Municipal Court [] is the functional equivalent of a conviction before a magisterial district judge." *Id*. We later expanded this holding to the courts of common pleas in *Hufman v. Board of Probation and Parole*, 58 A.3d 860, 864 (Pa. Cmwlth. 2012).

However, since the decisions in *Chesson* and *Hufman*, the legislative sands have shifted. As noted *supra*, the General Assembly amended Section 6138(a) to include paragraph (1.1) in 2019. Section 6138(a)(1.1) specifically provides that the Board may revoke parole for convictions of certain crimes graded as summary offenses, and most notably contains no requirement that the conviction occur before a court of record. This makes perfect sense in that non-traffic summary offenses charged alone are brought before an "issuing authority," i.e., not a court of record. As such, the rationale of *Chesson* and *Hufman* is not applicable in the instant case and the Board was authorized to revoke Petitioner's parole as the result of his guilty plea to the summary harassment charge.

Third, Petitioner argues that the Board erred or abused its discretion by relying upon the allegations contained in the criminal complaint for the dismissed terroristic threats charge.[13] However, in reviewing the record, we note that the specific act of throwing a rock was referenced with regard to the criminal complaint

---

[13] We treat Petitioner's third and fourth questions presented as functionally identical.

Petitioner also briefly addresses the issue raised in his petition for review and listed in the questions presented portion of his brief concerning whether his waiver of revocation hearing and right to counsel was the result of false pretenses and coercion. He acknowledges that this contention is hard to support based upon the executed waiver in the certified record but, referencing the *ex post facto* argument, contends that "[i]f [he] executed a waiver of the hearing under the assumption the summary harassment was not a revocable offense, then one can infer such waiver was not made without promise." Pet'r's Br. at 46. As we have rejected the *ex post facto* argument, this contention is not tenable.

for the harassment charge and, further, both the rock throwing and knife allegations are included in the affidavit of probable cause, which would support both charges. Moreover, this Court recognizes that "[a]ssaultive behavior encompasses a broader category of actions than would the crime of assault, and thus ***actions that would not constitute a crime may nonetheless be sufficient grounds for revocation of parole***." *Flowers v. Pa. Bd. of Prob. & Parole*, 987 A.2d 1269, 1272 (Pa. Cmwlth. 2010) (emphasis supplied) [quoting *Jackson v. Pa. Bd. of Prob. & Parole,* 885 A.2d 598, 601 (Pa. Cmwlth.2005)]. Further, in the context of parole violations, assaultive behavior is defined under the ordinary dictionary definition of assault, *id.*, and includes "a violent physical or verbal attack."[14] "Aggression" is defined as, *inter alia*, "a forceful action or procedure (such as an unprovoked attack) especially when intended to dominate or master."[15] Thus, we cannot say that the Board abused its discretion in finding that the nature of the summary harassment offense was aggressive and/or assaultive.

In light of the foregoing, we affirm.

**BONNIE BRIGANCE LEADBETTER,**
President Judge Emerita

---

[14] Definition of "assault," *Merriam-Webster.com Dictionary*, Merriam-Webster, https://www.merriam-webster.com/dictionary/assault (last visited Oct. 20, 2025).

[15] Definition of "aggression," *Merriam-Webster.com Dictionary*, Merriam-Webster, https://www.merriam-webster.com/dictionary/aggression (last visited Oct. 20, 2025).

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

John M. Sowers,                                      :
                              Petitioner             :
                                                     :
            v.                                       :      No. 272 C.D. 2023
                                                     :
Pennsylvania Parole Board,                           :
                              Respondent             :

# **O R D E R**

AND NOW, this 23rd day of October, 2025, the order of Respondent, Pennsylvania Parole Board, is AFFIRMED.

 

**BONNIE BRIGANCE LEADBETTER,**
President Judge Emerita